**WILDE & ASSOCIATES**
Gregory L. Wilde. Esq.
Nevada Bar No. 004417
212 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone:  702 258-8200
bk@wildelaw.com
Fax:  702 258-8787

MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO. P.A.
2525 East Camelback Road, Suite 300
Phoenix. Arizona 85016
Telephone: (602) 255-6000

Wells Fargo Bank, N.A.
10-71851

Electronically Filed on _____

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>Tayra Aguayo and Juan Cortes<br><br><br>　　　　　　　　　Debtors. | BK Case No.: 10-21570-bam<br><br>Date:<br>Time:<br><br>Chapter 13 |

## EX-PARTE APPLICATION FOR AN ORDER PURSUANT TO 362(4)(A)(i)

Wells Fargo Bank, N.A., Secured Creditor herein, ("Secured Creditor" or "Movant"

hereinafter). requests from this Court an Order Confirming that the Automatic Stay of 11 U.S.C § 362

has not arisen with respect to the Debtor due to the multiple filings as evidenced below.

This motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

1.      That on or about June 22, 2010, the above named Debtors filed this instant Chapter 13

Petition in Bankruptcy with the Court.

2.     Secured Creditor is the current payee of a promissory note dated September 12, 2005 in the principal sum of $195,773.00 ("Promissory Note" herein), secured by a Real Property Trust Deed of same date ("Trust Deed" herein) upon property generally described as 3579 Arbolado Drive, Las Vegas, NV 89121, and legally described as follows:

> LOT TWENTY-EIGHT (28) IN BLOCK SEVENTEEN (17) OF DESERT INN ESTATES
> UNIT NO. 4B AS SHOWN BY MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE
> 43 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.
> MANUFACTURED HOME INCLUDED CMH MANUFACTURING WEST INC
> MODEL NAME: GOLDEN WEST GE662F 71GOW28663CH06
> MODEL YEAR: 2006
> SERIAL NUMBER: PER033214CAAB

("subject property" herein).

3.     Prior to filing this case, the Debtor filed an additional case within a one year period as follows.: Chapter 13 Case number: 10-11209 filed January 27, 2010 District of Nevada, dismissed on March 18, 2010.

Prior to filing this case, the Debtor filed an additional case within a one year period as follows.: Chapter 13 Case number: 10-17106 filed April 22, 2010 District of Nevada, dismissed on June 9, 2010.

4.     Secured Creditor requests that the Court enter an Order confirming that there is no Automatic Stay affecting Secured Creditor with respect to the Debtor.

5.     Bankruptcy Code Section 362 (4)(A)(i) and (ii) states as follows:

If a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under section 707 (b), the stay under subsection (a) **shall not go into effect upon the filing of the later case; and**

> (ii)     **on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect;** *(emphasis added.)*

6.     As stated above. Debtor was a Debtor in two (2) prior cases pending within a preceding one year period of time prior to the institution of the present case. and that those prior cases were dismissed.

7.     Secured Creditor respectfully requests an order from the Court confirming that the Automatic Stay never arose as to Secured Creditor, and that Secured Creditor may proceed with collection on the note, including but not limited to foreclosure and an action to recover possession of the subject property described herein.

WHEREFORE. for all of the foregoing reasons. Secured Creditor, Wells Fargo Bank, N.A.. successor by merger to Wells Fargo Home Mortgage Inc. requests the Court to enter an Order confirming that the Automatic Stay has never arisen, with respect to the Debtor and the subject property described in this motion.

Respectfully submitted: 7/13/10

WILDE & ASSOCIATES

By: _____
Gregory L. Wilde, Esq.
Attorney for Secured Creditor
212 S. Jones Boulevard
Las Vegas, NV 89107

Copies of the foregoing mailed this _____ day of July 2010

Tayra Aguayo
3579 Arbolado Drive
Las Vegas, NV 89121
Pro De Debtor

Kathleen A. Leavitt
201 Las Vegas Blvd. So.. #200
Las Vegas. NV 89101
Trustee

Aguayo
124717

W AMU
0134935D14

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
20060112-0000076

APN#: 161-17-616-113

Fee: $25.00
N/C Fee: $25.00

Recording Requested BY:

01/12/2006          07:51:13
T20060007273

Wallick and Volk
222 E. 18th Street
Cheyenne, WY 82001

Requestor:
WALLICK AND VOLK

Frances Deane                    KGP
Clark County Recorder      Pgs:

RE-RECORDED

## DEED OF TRUST

***** Please re-record to reflect the updated Legal Description including the
Manufactured Housing Description and the addition of the Manufactured Home Rider pg
2,9,10,11.
(This replaces: 200509130002029 Date: 09/13/05  10:43:41 T20050167972,
8pages)********

20050913-0002029

Fee: $21.00
N/C Fee: $25.00

09/13/2005                    10:43:41
T20050167972

Requestor:
FIRST AMERICAN TITLE COMPANY OF NE

Frances Deane                 ADF
Clark County Recorder         Pgs: 8

Assessor's Parcel Number:
161-17-616-113
Return To:
Wallick & Volk, Inc.
222 E. 18th Street, Cheyenne, WY 82001

Prepared By:
Robin Gossard

~~Recording Requested By:~~

[Space Above This Line For Recording Data]

State of Nevada

## DEED OF TRUST

FHA Case No.

332-4420464-703

MIN1000501-0000624717-0

THIS DEED OF TRUST ("Security Instrument") is made on        September 7, 2005
The Grantor is TAYRA AGUAYO, AN UNMARRIED WOMAN and JUAN CORTES, AN UNMARRIED
MAN

("Borrower"). The trustee is FIRST AMERICAN TITLE

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as
nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. Wallick & Volk, Inc.
                                                                        , ("Lender")

is organized and existing under the laws of         the state of Wyoming
and whose address is 222 E. 18th Street, Cheyenne, WY 82001
                                   . Borrower owes Lender the principal sum of
One Hundred Ninety Five Thousand Seven Hundred Seventy Three and no/100
                                        Dollars (U.S. $ 195,773.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument
984AGUAYO,T                 624717                                          0
FHA Nevada Deed of Trust with MERS - 4/96

-4N(NV) (0507)      Amended 2/98
Page 1 of 8          Initials: _TA_   J.C.
VMP Mortgage Solutions, Inc.
(800)521-7291            MW 07/05

("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**October 1, 2035**      . This Security Instrument secures to Lender: (a) the repayment of the
debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b)
the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in
trust,    with    power    of    sale,    the    following    described    property    located    in
**Clark**                                    County, Nevada:
LOT TWENTY-EIGHT (28) IN BLOCK SEVENTEEN (17) OF DESERT INN ESTATES UNIT
NO. 4B AS SHOWN BY MAP THEREOF ON FILE IN BOOK 13 OF PLATS, PAGE 43 IN
THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.


MANUFACTURED HOME INCLUDED
CMH MANUFACTURING WEST INC
MODEL NAME:   GOLDEN WEST GE662F 71GOW28663CH06
MODEL YEAR:   2006
SERIAL NUMBER:   PER033214CAAB

which has the address of 3579 ARBOLADO DRIVE                                    [Street]
LAS VEGAS                                  [City], Nevada 89121          [Zip Code]
("Property Address");

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and
additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this
Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title
to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or
custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise
any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and
to take any action required of Lender including, but not limited to, releasing or canceling this Security
Instrument.

   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has
the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances
of record. Borrower warrants and will defend generally the title to the Property against all claims and
demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.

   Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

   1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of,
and interest on, the debt evidenced by the Note and late charges due under the Note.

   2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each
monthly payment, together with the principal and interest as set forth in the Note and any late charges, a
sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold
payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In
any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and
Urban Development ("Secretary"), or in any year in which such premium would have been required if
Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the
annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead
of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable
amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are
called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

984AGUAYO,T                        624717                              Initials: _____   0

-4N(NV) (0507)                  Page 2 of 8

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

984AGUAYO, T        624717

Initials: _TA_   J . C .     0

⁻4N(NV) (0507)        Page 3 of 8

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

   6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

   7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

   If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

   Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

   Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

   8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

   9. **Grounds for Acceleration of Debt.**

    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

984AGUAYO,T                                    624717

Initials: _TA_   J.C.   0

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

984AGUAYO, T                    624717

Initials: _TA_  J. C.          0

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.



**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ 0.00           .

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider              ☐ Growing Equity Rider            ☐ Other [specify]
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider

984AGUAYO,T                    624717

CMR-4N(NV) (0507)              Page 7 of 8

Initials: _TA_  J.C.                    0

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____.        _Tayra    Aguayo_____ (Seal)
                                  TAYRA AGUAYO              -Borrower

_____.        _Juan cortes._____ (Seal)
                                  JUAN CORTES              -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                         -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                         -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                         -Borrower


STATE OF NEVADA
COUNTY OF Clark
      This instrument was acknowledged before me on September 8, 2005    by
TAYRA AGUAYO and JUAN CORTES


Mail Tax Statements To:


984AGUAYO,T                  624717                                           0
VMP-4N(NV) (0507)            Page 8 of 8

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
MELISSA S. TRIBE
Appt. No. 02 77302-1
My Appt. Expires June 18, 2006

## MANUFACTURED HOME RIDER TO SECURITY INSTRUMENT

This Rider is made this 09-08-05 , and is incorporated into and amends and supplements the Mortgage, Open-End Mortgage, Deed of Trust, Credit Line Deed of Trust, or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to Wallick and Volk, Inc. ("Lender") of the same date ("Note") and covering the Property described in the Security Instrument and located at:

3579 ARBOLADO DRIVE       LAS VEGAS, NV       89121

(Property Address)

Borrower and Lender agree that the Security Instrument is amended and supplemented to read as follows:

1. **Meaning of Some Words.** As used in this Rider, the term "Loan Documents" means the Note, the Security Instrument and any Construction Loan Agreement, and the term "Property", as that term is defined in the Security Instrument, includes the "Manufactured Home" described in paragraph 3 of this Rider. All terms defined in the Note or the Security Instrument shall have the same meaning in this Rider.

2. **Purpose and Effect of Rider.** IF THERE IS A CONFLICT BETWEEN THE PROVISIONS IN THIS RIDER AND THOSE IN THE SECURITY INSTRUMENT, THE PROVISIONS IN THIS RIDER SHALL CONTROL. THE CONFLICTING PROVISIONS IN THE SECURITY INSTRUMENT WILL BE ELIMINATED OR MODIFIED AS MUCH AS IS NECESSARY TO MAKE ALL OF THE CONFLICTING TERMS AGREE WITH THIS RIDER.

3. **Lender's Security Interest.** All of Borrower's obligations secured by the Security Instrument also shall be secured by the Manufactured Home:

CMH            GOLDEN WEST

| NEW2006 | MANUFACTURING WEST INC | GE662F71GOW28663CH06 | PER033214CAAB | 792"X324" |
|---------|------------------------|----------------------|---------------|-----------|
| New/Used Year | Manufacturer's Name | Model Name or Model No. | Serial No | Length x Width |

4. **Affixation.** Borrower covenants and agrees:

    (a) to affix the Manufactured Home to a permanent foundation on the Property;

    (b) to comply with all Applicable Law regarding the affixation of the Manufactured Home to the Property;

    (c) upon Lender's request, to surrender the certificate of title to the Manufactured Home, if surrender is permitted by Applicable Law, and to obtain the requisite governmental approval and documentation necessary to classify the Manufactured Home as real property under Applicable Law;

    (d) that affixing the Manufactured Home to the Property does not violate any zoning laws or other local requirements applicable to the Property;

    (e) that the Manufactured Home will be, at all times and for all purposes, permanently affixed to and part of the Property.

NEVADA-FHA                 Page 1 of 3

5. **Fire, Flood & other Hazard Insurance.** Section 4, Paragraph 1 of the Security Instrument is amended to add a new second sentence to read:

> From the time of Initial Disbursement until the time that construction is completed (Final Inspection complete), the borrower must have Course of Construction or Builder's Risk insurance in effect.

6. **Additional Events of Default.** Borrower will be in default under the Security Instrument:

   (a) if any structure on the Property, including the Manufactured Home, shall be removed, demolished, or substantially altered;

   (b) if Borrower fails to comply with any requirement of Applicable Law (Lender, however, may comply and add the expense to the principal balance Borrower owes to Lender); or

   (c) if Borrower grants or permits any lien on the Property other than Lender's lien, or liens for taxes and assessments that are not yet due and payable.

7. **Notice of Default.** If required by Applicable Law, before using a remedy, Lender will send Borrower any notice required by law, and wait for any cure period that the law may require for that remedy.

8. **Additional Rights of Lender in Event of Foreclosure and Sale.** In addition to those rights granted in the Note and Security Instrument, Lender shall have the following rights in the event Lender commences proceedings for the foreclosure and sale of the Property.

   (a) At Lender's option, to the extent permitted by Applicable Law, Lender may elect to treat the Manufactured Home as personal property ("Personal Property Collateral"). Lender may repossess peacefully from the place where the Personal Property Collateral is located without Borrower's permission. Lender also may require Borrower to make the Personal Property Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and Borrower. At Lender's option, to the extent permitted by Applicable Law, Lender may detach and remove Personal Property Collateral from the Property, or Lender may take possession of it and leave it on the Property. Borrower agrees to cooperate with Lender if Lender exercises these rights.

   (b) After Lender repossesses, Lender may sell the Personal Property Collateral and apply the sale proceeds to Lender's reasonable repossession, repair, storage, and sale expenses, and then toward any other amounts Borrower owes under the Loan Documents.

   (c) In the event of any foreclosure sale, whether made by Trustee, or under judgment of a court, all of the real and Personal Property Collateral may, at the option of Lender, be sold as a whole or in parcels. It shall not be necessary to have present at the place of such sale the Personal Property Collateral or any part thereof. Lender, as well as Trustee on Lender's behalf, shall have all the rights, remedies and recourse with respect to the Personal Property Collateral afforded to a "Secured Party" by Applicable Law in addition to, and not in limitation of, the other rights and recourse afforded Lender and/or Trustee under the Security Instrument.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Rider.

_Tayra Aguayo_____ (SEAL)      _Juan Cortes_____ (SEAL)
Borrower                                          Borrower

_____          _____
Printed Name                                  Printed Name

STATE OF NEVADA          )
                                          ) ss.
COUNTY OF Clark          )

This instrument was acknowledged before me on Sept 8 th , 20 05
by Tayra Aguayo and Juan Cortes

_____
(Signature of notarial officer)

(Seal, if any)

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
MELISSA S TRIBE
Appt No 02-77302-1
My Appt Expires June 18, 2006

_____
(Title and rank (optional))

NEVADA-FHA                                Page 3 of 3

# NOTE

Multistate

FHA Case No.
332-4420464-703

September 7, 2005
[Date]

1000501-0000624717-0

3579 ARBOLADO DRIVE,LAS VEGAS,NV 89121
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
Wallick & Volk, Inc.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
One Hundred Ninety Five Thousand Seven Hundred Seventy Three and no/100

Dollars (U.S. $ 195,773.00        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of  Six and One / Quarter
percent (     6.2500       %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
November 1  ,  2005      . Any principal and interest remaining on the first day of       October         ,
2035    , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at 222 E. 18th Street, Cheyenne, WY          ,
or at such place as Lender may designate in writing
by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,205.41         . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for
the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a
partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in
writing to those changes.

984AGUAYO,T                                          624717                                          0
FHA Multistate Fixed Rate Note - 10/95
-1R (0210).02
VMP Mortgage Solutions (800)521-7291
Page 1 of 2   MW 12/02.01      Initials  _TA_  _J.C._

I HEREBY CERTIFY THIS
TO BE A TRUE EXACT
COPY OF SIGNED
WALLICK AND VOLK
BY

**6. BORROWER'S FAILURE TO PAY**

    (A)  Late Charge for Overdue Payments

        If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four          percent (     4.0000     %) of the overdue amount of each payment.

    (B)  Default

        If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    (C)  Payment of Costs and Expenses

        If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

    Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

    Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Tayra Aguayo_ _____ (Seal)    _Juan Cortes_ _____ (Seal)
TAYRA AGUAYO        -Borrower    JUAN CORTES        -Borrower

_____ (Seal)    _____ (Seal)
               -Borrower                   -Borrower

_____ (Seal)    _____ (Seal)
               -Borrower                   -Borrower

_____ (Seal)    _____ (Seal)
               -Borrower                   -Borrower

984AGUAYO,T               624717               0

VMP -1R (0210) 02           Page 2 of 2

PAY TO THE ORDER OF

Without Recourse
Wallick and Volk Inc.

By: _____

Title: DOROTHY J. JACOBSON VICE PRESIDENT

**Note Control**

Multistate

**NOTE**

FHA Case No.

332-4420464-703

September 7, 2005                                        1000501-0000624717-0
[Date]

3579 ARBOLADO DRIVE, LAS VEGAS, NV 89121
[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Wallick & Volk, Inc.

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of
One Hundred Ninety Five Thousand Seven Hundred Seventy Three and no/100

Dollars (U.S. $ 195,773.00        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  Six and One / Quarter
percent (    6.2500    %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on November 1    .    2005    . Any principal and interest remaining on the first day of    October    .
2035    , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at 222 E. 18th Street, Cheyenne, WY                ,
or at such place as Lender may designate in writing
by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,205.41        . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

984AGUAYO, T                            624717                            0

FHA Multistate Fixed Rate Note - 10/95

-1R (0210).02

VMP Mortgage Solutions (800)521-7291

Page 1 of 2    UW 10/C2.01    Initials  TA  J.C.

*195,773*

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four        percent (        4.0000        %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

| _Tayra Aguayo_ _____ (Seal) | _Juan Cortes_ _____ (Seal) |
|---|---|
| TAYRA AGUAYO              -Borrower | JUAN CORTES              -Borrower |
| _____ (Seal) | _____ (Seal) |
|                           -Borrower |                           -Borrower |
| _____ (Seal) | _____ (Seal) |
|                           -Borrower |                           -Borrower |
| _____ (Seal) | _____ (Seal) |
|                           -Borrower |                           -Borrower |

984AGUAYO,T                    624717                           0

VMP -1R (0210) 02              Page 2 of 2

PAY TO THE ORDER OF
WASHINGTON MUTUAL BANK, FA
Without Recourse
Wallick and Volk Inc.

By: _____

Title: DOROTHY J. JACOBSON VICE PRESIDENT



## LIMITED POWER OF ATTORNEY

THE UNDERSIGNED HEREBY APPOINT Wallick and Volk, Inc or its affiliates of "Wallick and Volk" as my/our Attorney-in-Fact to take the following actions as though executed by me/us:

to apply for a Manufacturer's Certificate/Statement of Origin or Duplicate Manufacturer's Certificate/Statement of Origin or Certificate or Duplicate Certificate of Title or Ownership on my/our behalf covering the collateral described below; or

to execute whatever documents are necessary to effectuate the Real Property Conversion after Initial Closing of said Collateral; or

to execute whatever documents are necessary to effectuate the Real Property Conversion of the Collateral, subject to the terms of the Contract and applicable state law governing disposition of the collateral; or

refitle the Collateral to correct any errors or to insure the proper perfection of Wallick and Volk's security interest in the Collateral.

This Limited Power of Attorney (POA") shall not be affected by subsequent disability or incapacity of the principal, or by the lapse of time. This POA shall not be construed as a waiver of my/our rights under the Contract or applicable state law governing the Contract and the sale of Collateral.

CmH
manufacturing WEST Inc
**Manufacturer**

Golden west
GE 662F  71G0W28663CH06
**Model/Make**

2006
**Year**

792" X 324"
**Length/Width**

Pro3324CAAB
**Serial Number**

_____
**Name**

_____
**Name**

Teyro  Aguayo
**Signature**
3579 Arbolado Drive
LAS Vegas NV 89121
**Physical Address**

Juan cortes
**Signature**
3579 Arbolado Drive
LAS Vegas NV 89121
**Physical Address**

State of: Nevada
County of: Clark

State of: Nevada
County of: Clark

Subscribed and sworn before me on
this __ day of Sept , 20 05.

_____
Notary Public

My Commission Expires

Subscribed and sworn before me on
this __ day of Sept , 20 05.

_____
Notary Public

My Commission Expires

**NOTARY PUBLIC**
**STATE OF NEVADA**
County of Clark
MELISSA S. TRIBE
Appt. No. 02-77302-1
My Appt. Expires June 18, 2006

**NOTARY PUBLIC**
**STATE OF NEVADA**
County of Clark
MELISSA S. TRIBE
Appt. No. 02-77302-1
My Appt. Expires June 18, 2006

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
National Default Servicing Corporation
2525 East Camelback Road, Suite 200
Phoenix, AZ 85016

**CONFORMED COPY**

**COPY** of Document Recorded
on 09/01/09 as No. BK 20090001 Inst 5416
Has not been compared with original.

NDSC NO.: 09-41590-WF-NV
LOAN NO.: 0634235014

APN: 161-12-616-113
002121208

## CORPORATION ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns and transfers to Wells Fargo Bank N.A. successor by merger to Wells Fargo Home Mortgage, Inc. all beneficial interest under that certain Deed of Trust dated 09/07/2005 executed by TAYRA AGUAYO, AN UNMARRIED WOMAN AND JUAN CORTES, AN UNMARRIED MAN Trustor, to FIRST AMERICAN TITLE Trustee, and recorded on 09/13/2005, as Instrument No. 20050913-0002029 (or Book, Page) and Re-Recorded on 01/12/2006 as Instrument No. 20060112-0000076 ADD MANUF HOME RIDER of Official Records of CLARK County, NV describing the land therein:
AS PER DEED OF TRUST MENTIONED ABOVE.
Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust

Date : 5/28/09

MERS   NOMINEE FOR  WALLICK & VOLK, INC. by its attorney in fact National Default Servicing Corporation

By  Olivia A. Todd
Its  President

STATE OF ARIZONA
COUNTY OF MARICOPA

On  5/28  , 20 09 , before me,  Julie A Butler  , a Notary Public for said State, personally appeared Olivia A. Todd  who personally known to me (or who proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing is true and correct.

WITNESS my hand and official seal.

Signature _____

OFFICIAL SEAL
JULIE A. BUTLER
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires June 17, 2011



## National Default Servicing Corporation
2525 E. Camelback Road, Suite 200
Phoenix, Arizona 85016

Phone (602) 264-6101
Fax (602) 264-6209

May 28, 2009

Chicago Title - ServiceLink
Sandy Brown
560 East Hospitality Lane
San Bernardino, CA 92408

     RE:    NDSC No.   :   09-41590-WF-NV
            Your No.    :   602121208
            Borrower   :   AGUAYO

Dear Sandy Brown,

Enclosed please find the following information documents for recording in connection with the above referenced loan.

| | | |
|---|---|---|
| ____ Notice of Default | ____ Substitution of Trustee |
| ____ Corporate Assignment | ____ Full Reconveyance |
| ____ Rescission of Notice of Default | ____ Notice of Sale |
| ____ Other _____ | ____ Rescission of Trustee's Deed Upon Sale |
| ____ Deed-In-Lieu of Foreclosure/ Estoppel Affidavit | ____ FHLMC/FNMA Conveyance Deed (Record Only – No Prelim) |
| ____ Quitclaim Deed | ____ Request for Copy of Notice of Default/Notice of Sale |
| ____ Trustee's Deed Upon Sale (DO NOT CHANGE OR ADD REAL PROPERTY TRANSFER TAX WITHOUT INFORMING THIS OFFICE) | |

Please contact the undersigned within twenty-four (24) hours of recording with the recording information. This is imperative that NDSC receive this information in order to meet the specified time frames and requirements of our clientele. Please do not hesitate to contact us should you have any questions.

Sincerely,

Trustee Sales

enclosure